UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHAUN L. CAIN,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              20-CV-1710S
COUNTY OF NIAGARA, NEW YORK, JOHN
DOE 1 AND 2,
CITY OF NIAGARA FALLS, NEW YORK, JOHN
DOE 3 AND 4,

                              Defendants.


## I.        Introduction

This is a civil rights action following the detention, arrest, and prosecution of
Plaintiff Shaun Cain.

Before this Court is the Motion to Dismiss of Defendant County of Niagara and
Niagara County Deputy John Doe 1 and 2[1] (collectively "County Defendants") (Docket
No. 5).

For the reasons stated herein, this Motion to Dismiss (id.) is denied in part,
upholding the Second Cause of Action alleging false arrest against the County
Defendants, and granted in part, dismissing the First, Third, Fourth, and Fifth Causes of
Action against the County Defendants.

---

[1]Plaintiff later learned the identities of the County John Doe Defendants; John Doe 1 is Deputy
Keith Kennedy and John Doe 2 is Deputy Guy Fratello, Docket No. 8, Pl. Memo. at 4.

## II.    Background

Defendants are the County Defendants Niagara County, deputy John Doe 1 and 2, the City of Niagara Falls (hereinafter "the City"), and John Doe Niagara Falls Police officers 3 and 4.

### A.  Facts

On March 25, 2019, Plaintiff's former girlfriend, Lakara Brewer, worked at the 7-Eleven in Wheatfield, New York.  Plaintiff and his mother, Louise Blissett, went to that 7-Eleven to retrieve Plaintiff's allegedly stolen property from Brewer.  (Docket No. 1, Compl. ¶¶ 33-34.)  Plaintiff and Blissett saw the property in Brewer's car and Blissett called 911 reporting the stolen property (id. ¶¶ 36, 37).

Niagara County deputies John Doe 1 and 2 arrived about a half hour after Blissett's call and first spoke with Plaintiff and then with Brewer (id. ¶¶ 39-44).  Plaintiff alleges that John Doe 1 pressured Brewer to charge Plaintiff, abusing his office in so doing (id. ¶¶ 45-47, 50, 52-53, 54).  Brewer eventually signed a statement against Plaintiff drafted by John Doe 1 that Plaintiff claims she signed upon John Doe 1's compulsion (id. ¶¶ 53-54, 57).

At first Plaintiff alleges John Does 1 and 2 arrested him but he later alleges John Doe 2 told Plaintiff that he was not under arrest (id. ¶¶ 57, 61-62).  John Doe 2 ordered Plaintiff out of his vehicle.  John Does 1 and 2 then handcuffed and detained Plaintiff.  (Id. ¶¶ 62-63.)  Plaintiff deemed himself under arrest by these deputies (id. ¶ 64).

After holding Plaintiff in County custody for 45 minutes, John Doe deputies 1 and 2 removed the handcuffs and transferred Plaintiff to City of Niagara Falls police officers, Defendant John Does 3 and 4 (id. ¶ 67).  The City police officers then arrested Plaintiff (id. ¶ 68).  Plaintiff was charged with criminal obstruction of breathing, N.Y. Penal L.

§ 121.11 (a class A misdemeanor), and harassment in the second degree, N.Y. Penal L. § 240.26(1) (a violation) (id. ¶ 76).  As a result of these actions, "Plaintiff was forcefully detained, confined and imprisoned, handcuffed, finger printed, mug shot and his clothing removed, all without just or probable cause" (id. ¶ 74).  He alleges that Defendants knew that they were arresting him based on a falsehood (id. ¶ 77).

Plaintiff then was arraigned and released on his own recognizance (id. ¶¶ 78-83).  After numerous court appearances, the state court dismissed all charges against Plaintiff on July 2, 2019 (id. ¶ 84).  He alleges malicious prosecution without any just cause or reason while Defendants were aware of his innocence (id. ¶ 85).

B.  Complaint and Causes of Action

On June 21, 2019, Plaintiff served Notices of Claim upon the municipal Defendants (id. ¶¶ 26-28, 30-31).  Plaintiff noted the deadline for commencing this action was subject to "numerous stays promulgated by Governor Cuomo" (id. ¶ 32).  Plaintiff then filed and served his Complaint (id.).  He invokes this Court's original jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (federal civil rights), and supplemental jurisdiction under 28 U.S.C. § 1367 (id. ¶¶ 3-4).

The First Cause of Action alleges violation of 42 U.S.C. § 1983 against all Defendants (Docket No. 1, Compl. ¶¶ 95-96).  Plaintiff complains that, by detaining and imprisoning him without probable cause or justification, "Defendants deprived Plaintiff of his due process rights, remedies, privileges, and immunities guaranteed to every citizen of the United States" (id. ¶ 95).  He alleges that the Defendant officers and deputies acted under color of state law and abused their authority (id. ¶ 96).  Defendants violated

Plaintiff's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution (id. ¶¶ 95, 96, 87).

The Second Cause of Action alleges common law false arrest and false imprisonment against all Defendants because the John Doe deputies 1 and 2 (without justification and probable cause) provided false information to John Doe officers 3 and 4 who then arrested Plaintiff (id. ¶¶ 98-100, 99).

The Third Cause of Action also alleges common law malicious prosecution by all Defendants for Plaintiff's arrest and prosecution until charges were dismissed (id. ¶¶ 102-04, 82-85).

The Fourth Cause of Action alleges Defendants violated Plaintiff's due process rights by arresting him in front of his mother, keeping him in custody for 45 minutes, deprived of food and water, taking him to the hospital in his boxers, all in deprivation of his due process rights (id. ¶¶ 106-07).  Plaintiff does not allege whether he is invoking federal or state constitutional due process, unlike his First Cause of Action where he cited amendments to the United States Constitution.

Finally, the Fifth Cause of Action alleges municipal liability against the City of Niagara Falls and Niagara County for arresting and prosecuting Plaintiff despite knowing the charges against him were false (id. ¶¶ 109-19).  He claims the City and County had policies, practices, and customs to act upon false reports (id. ¶¶ 112-14).  Plaintiff again did not allege if this arises under federal or state constitutional law, cf. N.Y. Const. art. I, § 6, but the limits on municipal liability arise under 42 U.S.C. § 1983 for federal rights, see Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 665-83, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978)  Whether the Fourth and Fifth Causes of Action are under federal or state law is important for establishing the applicable statute of limitations.

Plaintiff seeks to recover up to $30,000.00 for damages, plus attorneys' fees, costs, and disbursements (id. at WHEREFORE Cl., at page 18 of 20).  He also seeks punitive damages (id. ¶ 2).

### C.  Proceedings and Motion to Dismiss

The County Defendants moved to dismiss (Docket No. 5[2]).  First, they argue that the state law causes of action (the Second through Fifth Causes of Action) are untimely, despite the COVID-19 Executive Orders suspending statutes of limitation (id., Defs. Memo. at 7-8).  They do not contest the timeliness of the federal First Cause of Action. Next, they declare Plaintiff's due process, false arrest and false imprisonment claims were meritless as is his malicious prosecution claim alleged in the Third Cause of Action (id. at 1, 8-16, 16-17).  Third, the County Defendants deny vicarious municipal liability for the acts of the deputies (id. at 1, 17-19; see Joerg Decl. ¶¶ 3-4).

Responses to this Motion were due by March 9, 2021, and reply by March 16, 2021 (Docket No. 6).  Meanwhile, Defendant City answered (Docket No. 13), asserting a crossclaim against the County Defendants for contribution in the event Plaintiff prevailed against the City (id. ¶ 35).  The County Defendants' attorney filed a Declaration (Docket

---

[2]In support of their Motion to Dismiss, the County Defendants submit the Declaration of Deputy Keith Kennedy with exhibit (copy of incident report); the Declaration of Niagara County Attorney Claude Joerg; their Memorandum of Law, Docket No. 5.

In opposition, Plaintiff submits his Memorandum, Docket No. 8, and his attorney's Affirmation, Docket No. 9.

The County Defendants replied with their Reply Memorandum of Law, Docket No. 12, and their attorney's Declaration regarding the City of Niagara Falls' Answer and crossclaim, Docket No. 14.

No. 14) extending their Motion to Dismiss to include the City's crossclaim (id., Def. Atty. Decl. ¶¶ 5-8).  The City did not respond to this Motion.

### III.   Discussion

A. Applicable Standards

1. Motion to Dismiss

The County Defendants move to dismiss on the grounds that the Complaint fails to state a claim for which relief can be granted (Docket No. 5).  Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

6

possibility and plausibility of "entitlement to relief."' <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

## 2. Supplemental Jurisdiction

Subject matter jurisdiction over the state law claims (such as the Second and Third Causes of Action and portions of his Fourth Cause of Action) may be raised by the parties or by this Court <u>sua sponte</u>, <u>Lyndonville Sav. Bank & Trust v. Lussier</u>, 211 F.3d 697, 700-01 (2d Cir. 2000); <u>LaChapelle v. Torres</u>, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014). This Court must examine its jurisdiction at any point in the proceeding, <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); <u>see</u> 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, and Mary Kay Kane, <u>Federal Practice and Procedure</u> § 3722, at 115 (Jurisd. rev. 4th ed. 2018).

Original federal jurisdiction here arises from Plaintiff's First and Fifth Causes of Action under 42 U.S.C. § 1983 and potentially under the Fourth Cause of Action.  The Second and Third Causes of Action under New York common law share the same nucleus of operative facts as the First, Fourth, and Fifth Causes of Action alleging violation of due process and asserting municipal liability.  Under 28 U.S.C. § 1367, this Court may decide to exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998), or may decline to hear these supplemental state law claims, 14C Federal Practice and Procedure, supra, § 3722, at 122.  Under § 1367(c), this Court would decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(c)(4); see Klein, supra, 26 F. Supp. 2d at 692.

This Court first will address the timeliness of Plaintiff's claims, then the merits of his timely federal claims, and (if necessary) whether this Court will exercise supplemental jurisdiction over any timely state law claims against the County Defendants.

B.  Statutes of Limitations and Pandemic Executive Orders

1.  Relevant Statutes of Limitation

To allege common law tort claims against a municipality or its employees under New York General Municipal Law, the claimant needs to serve a Notice of Claim upon the municipality, N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1); see also Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789 793 (2d Cir. 1999) (in federal court state notice of claim statutes apply to state law claims); 13391 Broadway LLC v. Village of Alden, No. 19CV882, 2020 WL 7028601, at *7 (W.D.N.Y. Nov. 30, 2020) (Skretny, J.), which Plaintiff has done here (Docket No. 1, Compl. ¶¶ 26-28, 30-31).  These claims have a

limitation period of one year and ninety days after the event, N.Y. Gen. Mun. Law § 50-i(1)(c), see also 13391 Broadway LLC, supra, 2020 WL 7028601, at *7.

Ordinarily, a timely action against sheriff (and deputies[3] as alleged in the Second Cause of Action) is commenced within one year of the incident, N.Y. CPLR 215(1) (see Docket No. 5, Defs. Memo. at 7).  Intentional tort (such as malicious prosecution alleged in the Third Cause of Action) also must be commenced within one year of the incident, N.Y. CPLR 215(3) (see Docket No. 8, Pl. Memo. at 14), extended one year from termination of criminal prosecution, N.Y. CPLR 215(8) (id.) to be timely.

In contrast, Plaintiff's federal civil rights claims (First and Fifth Causes of Action and the federal aspects of Plaintiff's Fourth Cause of Action) borrow New York limitations period of 3 years for personal injury claims, N.Y. CPLR 214(5) (Docket No. 8, Pl. Memo. at 14), Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 24 (1985); Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (notice of claim and timing for commencing action not required for federal civil rights action against municipality). Within the borrowed limitations procedures are New York's tolling provisions, Board of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 483, 100 S.Ct. 1710, 64 L.Ed.2d 440 (1980); Bowers v. City of Salamanca, No. 20CV1206, 2021 WL 2917672, at *5 (W.D.N.Y. July 12, 2021) (Vilardo, J.) (see also Docket No. 8, Pl. Memo. at 14).

2.  Parties' Contention

The County Defendants argue that the state law claims are untimely, not contesting the timeliness of Plaintiff's First Cause of Action (and presumably the federal

---

[3]Cumming v. Brown, 43 N.Y. 514 (1871); Kingston v. Erie County, 122 A.D.2d 543, 544, 505 N.Y.S.2d 9, 9 (4th Dep't 1986); see Houghton v. Cardone, 295 F.Supp.2d 268, 279 n.4 (W.D.N.Y. 2003) (Larimer, J.).

aspects of his Fourth and Fifth Causes of Action).  The County Defendants contend that the COVID-19 Pandemic Executive Orders merely suspended the statutes of limitation and did not toll them (Docket No. 5, Defs. Memo. at 8; Docket No. 12, Defs. Reply Memo. at 2), extinguishing his untimely claims.  Despite these Orders, the County Defendants conclude Plaintiff's state law claims are time barred.  (Docket No. 5, Defs. Memo. at 7-8.)

Plaintiff argues that the Executive Orders tolled the statutes of limitation rather than suspending them, and his claims were timely as so tolled (Docket No. 8, Pl. Memo. at 13-14).

County Defendants and Plaintiff thus debate whether the pandemic Executive Orders tolled or suspended state statutes of limitation (<u>compare</u> Docket No. 5, Defs. Memo. at 8; Docket No. 12, Defs. Reply Memo. at 2 <u>with</u> Docket No. 8, Pl. Memo. at 13-14).

### 3.   COVID-19 Pandemic Executive Orders

This Court applies New York rule for tolling statutes of limitation, <u>Tomanio</u>, <u>supra</u>, 446 U.S. at 483 ("the federal courts were obligated not only to apply the analogous New York statute of limitations to respondent's federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations"); <u>Bowers</u>, <u>supra</u>, 2021 WL 2917672, at *5.  The statutes of limitation were tolled by the COVID Executive Orders based upon the inability to commence actions in state courts.  This and other federal courts, however, remained open at least for filing actions during much of the pandemic.  Nevertheless, this Court still must adopt the tolling rules of state law.

On March 20, 2020, then Governor Andrew Cuomo issued Executive Order 202.8, 9 N.Y.C.R.R. § 8.202.8, which declared a state of emergency due to the COVID-19

pandemic and "among other things, toll[ed] the time limits for filing legal actions as prescribed by the state's procedural laws," <u>Bonilla v. City of N.Y.</u>, No. 20-CV-1704(RJD)(LB), 2020 WL 6637214, at *1 (E.D.N.Y. Nov. 12, 2020). This initial Executive Order provided that

> NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily <u>suspend</u> or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 19, 2020 the following:

> "In accordance with the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to . . . the civil practice law and rules, . . . , or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby <u>tolled</u> from the date of this executive order until April 19, 2020."

9 N.Y.C.R.R. § 8.202.8 (emphasis added); <u>see</u> <u>People v. Gonzalezyunga</u>, 71 Misc.3d 1210(A), 143 N.Y.S.3d 863 (Table) (Dist. Ct. Nassau County Apr. 21, 2021) (Docket No. 8, Pl. Memo. at 13).

The Governor then issued a series of nine Executive Orders extending this toll[4]. On October 4, 2020, the Governor issued Executive Order 8.202.67, the last of periodic extensions of the toll to November 3, 2020, 9 N.Y.C.R.R. § 8.202.67 (<u>id.</u> at 14); <u>see</u> <u>Brash v. Richards</u>, 195 A.D.3d 582, 583-84, 149 N.Y.S.3d 560, 562 (2d Dep't 2021); <u>Taylor v.</u>

---

[4] 9 N.Y.C.R.R. §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.63, 8.202.67.

State, 73 Misc.3d 1212(A) at *3, 154 N.Y.S.3d 409 (Table) (N.Y. Ct. Cl. 2021).  This last Executive Order acknowledged the toll from prior Orders, 9 N.Y.C.R.R. § 8.202.67; Brash, supra, 195 A.D.3d at 584, 149 N.Y.S.3d at 562.  On November 3, 2020, the Governor issued a final Executive Order which "reiterated that the 'toll' would no longer be in effect as of November 4, 2020," 9 N.Y.C.R.R. § 8.202.72; Brash, supra, 195 A.D.2d 582, 149 N.Y.S.3d at 563 (emphasis in original).

This Court has held that Executive Order 8.202.8 applies in federal cases to toll New York statutes of limitation, Bowers, supra, 2021 WL 2917672, at *5; see Bonilla, supra, 2020 WL 6637214; see also Citi Connect, LLC v. Local Union No. 3, No. 20 Civ. 5147, 2020 WL 5940143, at *3-4 (S.D.N.Y. Oct. 7, 2020) (Executive Order tolls statute of limitations for False Claims Act action).

### 4.  Toll or Suspend

The New York Court of Appeals held that

"A toll does not extend the statute of limitations indefinitely but merely suspends the running of the applicable statute of limitations for a finite and, in this instance, readily identifiable time period; keyed to judicial determinations recorded in the litigation record, the period of the toll is excluded from the calculation of the time in which the plaintiff can commence an action."

Bermudez Chavez v. Occidental Chemical Corp., 35 N.Y.3d 492, 505 n.8, 133 N.Y.S.3d 224, 233 n.8 (2020).

Courts have held that Executive Order 8.202.8 tolls statutes of limitation, Taylor, supra, 73 Misc.3d 1212(A) at *3, 154 N.Y.S.3d 409; Brash, supra, 195 A.D.3d 582, 149 N.Y.S.3d 560 (2d Dep't 2021); Payne v. King Neptunes NY, LLC, 73 Misc.3d 1210(A), 154 N.Y.S.3d 409 (Table) (Sup. Ct. Warren County 2021).  "The period of the toll is excluded from the calculation of the time in which the plaintiff can commence an

action," Bermudez Chavez, supra, 35 N.Y.3d at 505 n.8, 133 N.Y.S.3d at 233 n.8, quoted in Taylor, supra, 73 Misc.3d 1212(A), at *3, 154 N.Y.S.2d 409 (subtracting the tolled days from when claim accrued to when movant filed late claim motion).  A toll "suspends the running of the applicable period of limitation for a finite time period," Foy v. State of N.Y., 71 Misc.3d 605, 608, 144 N.Y.S.3d 285, 288 (N.Y. Ct. Cl. 2021); Matter of 701 River St. Assocs. LLC, 72 Misc.3d 302, 308, 148 N.Y.S.3d 365, 369 (Sup. Ct. Rensselaer County 2021).  A toll extends the limitations period for the duration of the tolling.

Asked whether the pandemic Executive Orders constituted a toll or a suspension of filing deadlines, the Second Department in Brash held that the Governor still had statutory authority to modify statutes to toll statutes of limitation, 195 A.D.3d at 582-85, 149 N.Y.S.3d at 561, 562-63.  This is a toll despite Executive Law § 29-a not expressly giving the Governor authority to toll limitations periods.  The Second Department here distinguished a toll (which excludes the tolled period from the calculation of the limitations period) from a suspension (which does not exclude time but merely delays its operation until the end of the suspending event).  Id. at 582, 149 N.Y.S.3d at 561 (quoting Foy, supra, 71 Misc.3d at 608, 144 N.Y.S.3d at 288); see Johnston v. City of Syracuse, No. 5:20-CV-1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021); Bowers, supra, 2021 WL 2917672, at *6 n.5.

Suspension, however, extends the expiration date without reinstating the statute of limitations, Lopez-Motherway v. City of Long Beach, No. 2:20-cv-5652, 2021 WL 965158, at *7 (E.D.N.Y. Mar. 15, 2021).  A suspension of the statute of limitations merely delays its implementation until the suspension ends.

Defendants argue that the Governor's authority to suspend the statute of limitations arose from New York Executive Law § 29-a and is limited to a suspension (Docket No. 5, Defs. Memo. at 7).  They cite to a decision following the 9-11 attacks that held that then-Governor Pataki's Executive Order merely suspended the statute of limitations and was not a toll, <u>Scheja v. Sosa</u>, 4 A.D.3d 410, 411-12, 771 N.Y.S.2d 554, 556 (2d Dep't 2004) (<u>id.</u> at 8).  The court termed Governor Pataki's orders as suspensions of the statute of limitations, discussing Executive Order No. 113.7, <u>see</u> 9 N.Y.C.R.R. § 5.113 (initial declaration of emergency), which suspended temporarily the statutes of limitation, <u>Scheja</u>, <u>supra</u>, 4 A.D.3d at 411, 771 N.Y.S.2d at 555; <u>see</u> <u>McLaughlin v. Snowlift Inc.</u>, 71 Misc.3d 1226(A) at *2, 145 N.Y.S.3d 781 (Table) (Sup. Ct. Kings County 2021) (COVID-19 pandemic orders suspended the statute of limitations not a toll, citing <u>Scheja</u>).

The COVID-19 Executive Orders, however, expressly tolled the time limit for commencement of an action, with the Governor basing his authority upon Executive Law § 29-a and its authorization "to suspend or modify any statute," 9 N.Y.C.R.R. § 8.202.8; <u>see</u> N.Y. Exec. L. § 29-a(1); <u>Brash</u>, <u>supra</u>, 195 A.D.3d 582, 149 N.Y.S.3d 560; <u>Matter of Estate of Powell</u>, 73 Misc.3d 398, 404, 154 N.Y.S.3d 201, 205 (Sur. Ct. Erie County 2021).

Judge David Hurd in <u>Johnston v. City of Syracuse</u>, <u>supra</u>, 2021 WL 3930703, at *5-6, held that these Executive Orders merely suspended the statutes of limitation and, to be timely, plaintiff Dr. Mark Johnston needed to file within the suspension period to be timely.  Recognizing that the Governor intended to toll rather than suspend the statute of limitations, Judge Hurd questioned the Governor's authority to do so, but avoided deciding the question by holding that this issue raised a novel issue under New York law

and declining to exercise supplemental jurisdiction over the claims, id. at *6, 7; see Moore v. City of Syracuse, No. 5:20-CV-1641, 2021 WL 3930730, at *7 (N.D.N.Y. Sept. 2, 2021) (Hurd, J.); Lopez-Motherway, supra, 2021 WL 965158, at *8.

This Court agrees with most state (including the Second Department in Brash) and federal courts that have addressed this issue and holds that Executive Orders 8.202.8, 8.202.67, and 8.202.72 (as well as the intervening orders) toll the statutes of limitation. During the duration of the COVID-19 pandemic emergency, the Governor modified the statutes of limitation under the authority of Executive Law § 29-a and tolled these statutes. Executive Law § 29-a did not limit that authority to merely suspending statutes of limitation.

The federal cases declining to exercise supplemental jurisdiction due to the then unresolved and thorny issue of toll or suspension were decided before the Second Department's decision in Brash. Although Brash was decided when Judge Hurd rendered decisions in the two cited cases, he did not cite Brash while observing that no New York appellate court had considered the question, Johnston, supra, 2021 WL 3930703, at *7; Moore, supra, 2021 WL 3830730, at *7.

This Court has reviewed the New York appellate court's decision in Brash and its conclusion that the Governor was authorized under Executive Law § 29-a to toll the statute of limitations. The Governor modified and tolled these statutes of limitation during the stated duration of the COVID-19 emergency. This toll applies to claims against the City and John Does 3 and 4 as well as movant County Defendants. Despite the question of the existence and authority for this toll, this Court will exercise supplemental jurisdiction over the County Defendants.

### 5.   Application to Plaintiff's State Law Claims

As a toll, Plaintiff gains the time tolled to the normal limitation periods.  Thus, for the Second Cause of Action, Plaintiff's claim for false arrest and false imprisonment[5] accrued on March 25, 2019.  As a tort against a municipality and municipal employees, Plaintiff normally would have one year and 90 days, or by June 23, 2020, to sue.  With the pandemic Executive Orders, the period from March 20, 2020, through November 4, 2020, is tolled.  Plaintiff sued on November 23, 2020 (Docket No. 1, Compl.), within the extended limitations period following that toll.  The Second Cause of Action therefore is timely.

Similarly, Plaintiff's malicious prosecution claim in the Third Cause of Action is timely as its statute of limitation was tolled.  This claim accrued when the Plaintiff's criminal case was disposed of, on July 2, 2019 (Docket No. 1, Compl. ¶ 84), N.Y. CPLR 215(8).  Under the one-year statute of limitations of CPLR 215(8), Plaintiff ordinarily would have until July 2, 2020, to commence this action.  With the Executive Orders tolling the period, this Third Cause of Action (filed on November 23, 2020) is timely.

Thus, the County Defendants' Motion to Dismiss (Docket No. 5) Plaintiff's purported untimely claims is denied.

### C.  Remaining Claims

This Court next determines if Plaintiff alleges a claim for the remaining timely claims.

---

[5]And the state law aspects of the Fourth Cause of Action for due process violations.

16

1. First Cause of Action, § 1983, and Fourth Cause of Action, Due Process

This Court considers together the First and Fourth Causes of Action since both causes of action allege violations of due process from Plaintiff's detention.

a. Applicable Standards

i. Constitutional Rights Invoked

Title 42 U.S. Code § 1983 provides

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' Baker v. McCallan, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 2694, n.3, 61 L.Ed.2d 433 (1979)," Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

To prove the elements of a § 1983 cause of action Plaintiff must show that "(1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States," City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring).  Here, the first two elements are not questioned.

For deprivation of rights Plaintiff invokes his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  These rights under the First, Fourth, and Eighth Amendments are applicable to municipalities through incorporation by the Due Process

17

Clause of the Fourteenth Amendment, see Elkins v. United States, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)), while the Fourteenth Amendment Due Process Clause is applicable to actions against a municipality rather than the Fifth Amendment, Alexis v. Town of Cheektowaga, No. 17CV985, 2021 WL 5239900, at *9 (W.D.N.Y. Nov. 10, 2021) (Skretny, J.); see Duesenbery v. United States, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

One source of the rights cited here by Plaintiff primarily is the Fourth Amendment to the United States Constitution, Bryant v. City of N.Y., 404 F.3d 128, 135-36 (2d Cir. 2005) (Docket No. 1, Compl. ¶¶ 95-96; see Docket No. 5, Defs. Memo. at 9).  The Due Process Clause of the Fourteenth Amendment also provides another source of rights, that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1 (see Docket No. 1, Compl. ¶¶ 95-96, alleging deprivation of due process rights, citing the Fourteenth Amendment).

The Fourth Amendment provides

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

Plaintiff alleges that Defendants deprived him of his due process rights from his detention, arrest, and incarceration (see Docket No. 1, Compl. ¶ 95).  These deprivations

may include the subsequent malicious prosecution following that detention and arrest (see id. ¶¶ 82-85, 87, 94).

> "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "'by means of physical force or show of authority,'" terminates or restrains his freedom of movement, Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), 'through means intentionally applied,' Brower v. County of Inyo, 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original)."

> Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

The First Amendment prohibits Congress from making a law abridging the freedom of speech, prohibiting the free exercise of religion, or the right to peaceable assembly, among other fundamental rights, U.S. Const. amend. I.   The Fifth and Fourteenth Amendments prohibit the deprivation of life, liberty, or property without due process of law, id. amends. V, XIV, § 1. Finally, the Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted," id. amend. VIII.

### ii.  Constitutional False Arrest

False arrest (or false imprisonment) in a § 1983 civil rights action has the same elements as state common law false arrest claim, Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (see Docket No. 5, Defs. Memo. at 11).   Those elements are that the defendant intended to confine the plaintiff; that plaintiff was conscious of the confinement and did not consent to the confinement; and the confinement was not otherwise privileged, Singer, supra, 63 F.3d at 118 (quoting Broughton v. State of N.Y., 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, cert. denied, 423 U.S.

929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)).  One notable privilege is that the officers had probable cause to arrest the plaintiff, see id.  "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,'" Weyant, supra, 101 F.3d at 852 (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994)); Romanac v. Town of Cheektowaga, No. 17CV334, 2021 WL 409859, at *8 (W.D.N.Y. Feb. 5, 2021) (Skrenty, J.).

"Probable cause 'is a complete defense to an action for false arrest brought under New York law or § 1983,' Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam)," Alexis, supra, 2021 WL 5239900, at *4 (additional case citations omitted). Such an arrest is privileged, id. (citations omitted).

For Plaintiff's Due Process claim, a prolonged post-arrest detention implicates the Fourth Amendment, Mikulec v. Town of Cheektowaga, 909 F. Supp.2d 214, 227 (W.D.N.Y. 2012) (Skretny, C.J.) (citing cases).  "A jurisdiction that releases the accused or 'provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein [v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)],'" Mikulec, supra, 909 F. Supp.2d at 227 (quoting County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)).

If Plaintiff alleges violation of New York constitutional law in his due process Fourth Cause of Action, the standards are the same as under the federal Due Process Clause, see Zaniewska v. City of N.Y., 569 F. App'x 39, 40 (2d Cir. 2014); Weyant, supra, 101 F.3d at 852-53 (Docket No. 5, Defs. Memo. at 9).

iii.   Constitutional Malicious Prosecution

Malicious prosecution under the Fourth and Fourteenth Amendments in a § 1983 action requires allegations that (1) the elements for common law malicious prosecution (also applicable for Plaintiff's Third Cause of Action) are satisfied and (2) the malicious prosecution led to a deprivation of liberty sufficient to constitute a "seizure" under the Fourth Amendment, or allege that the malicious prosecution violated a right, privilege, or immunity secured by the Constitution or laws of the United States, Singer, supra, 63 F.3d at 116 & n.5; Mejia v. City of N.Y., 119 F. Supp.2d 232, 253-54 (E.D.N.Y. 2000); see also Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003) (claims for malicious prosecution are similar under New York law and § 1983).   The elements of common law malicious prosecution are (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice, Broughton v. State of New York, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, cert. denied sub. nom. Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); see Mendez v. City of N.Y., 137 A.D.3d 468, 471, 27 N.YS.3d 8, 12 (1st Dep't 2016).

b.   Parties' Contentions

The County Defendants argue that Plaintiff fails to allege how his First, Fifth, and Eighth Amendment rights were violated (Docket No. 5, Defs. Memo. at 9 n.1).   Viewing the alleged deprivation only for the 45-minute detention of Plaintiff, County Defendants apply the Fourth Amendment's false arrest analysis and extend it to the First and Second Causes of Action (id. at 9).   Even if the deputies' detention was an arrest, the County Defendants assert that there was probable cause for it (id. at 10).   Alternatively, since the

detention less than 48 hours long, it was presumptively valid under the Fourth Amendment, see Mikulec, supra, 909 F. Supp.2d at 227 (id.).  This applied either for Plaintiff's detention in the County's custody or when he was released following his arraignment (id.; see Docket No. 1, Compl. ¶¶ 45, 47, 82-83).

For this Motion the County Defendants concede that Plaintiff alleges the first three elements of a false arrest/imprisonment claim but contend that the claim fails because Defendants had probable cause to detain and arrest him (Docket No. 5, Defs. Memo. at 11-16).  They cite to the Declaration of Deputy Keith Kennedy (John Doe 1) who denies the facts alleged by Plaintiff (id. at 5; id., Ex. A, Kennedy Decl.).

Plaintiff responds that the deputies lacked the authority to arrest him in Wheatfield for a petty offense since they did not observe the offense that allegedly occurred in Niagara Falls the day before (Docket No. 8, Pl. Memo. at 10-11, citing N.Y. Crim. Proc. L. § 140.10).  Plaintiff denies that the County Defendants had probable cause to arrest him.  Furthermore, he argues that the County Defendants manufactured whatever probable cause County Defendants assert by John Doe 1 compelling Brewer to file a criminal complaint.  (Id. at 11-12.)

He argues that this Court should not consider Deputy Kennedy's Declaration in support of a Motion to Dismiss since that Motion only addresses the face of the pleadings (id. at 4).

Plaintiff concedes that his claim against only the County in the Fourth Cause of Action should be dismissed (id. at 14-15).  He denies that John Does 1 or 2 argue a basis to dismiss the Fourth Cause of Action as against them (id. at 15).

### c.  Allegation of a Claim

#### i.  Kennedy Declaration

First, this Court disregards Defendant Kennedy's Declaration (Docket No. 5, Ex. A).  This Declaration raises an issue of fact whether the deputies had probable cause to detain Plaintiff.  To include it in consideration of the Motion to Dismiss would require conversion of this Motion into a Motion for Summary Judgment but without the requisite moving papers or prior notice, Fed. R. Civ. P. 12(d) (matters outside of pleadings presented and not excluded by the court requires conversion of the Motion to Dismiss into a Summary Judgment Motion).

A Motion to Dismiss would be converted if this Court accepts the material outside of the pleadings.  This Court has "complete discretion" (as termed by commentators) whether to accept any material beyond the pleadings, 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 159 (Civil 3d ed. 2004).  Kennedy's Declaration denies Plaintiff's allegations regarding probable cause to detain and arrest Plaintiff, merely establishing a material issue of fact that could not be resolved in a converted Summary Judgment Motion, cf. id. at 165-66 (where proffered material is inconclusive, courts decline to accept for conversion).  This Declaration (Docket No. 5, Ex. A) is excluded and the Motion remains a Motion to Dismiss.

#### ii.  Fourth Amendment Seizure

The First and Fourth Causes of Action both allege due process violations (deemed under the Fourteenth Amendment Due Process Clause) for Plaintiff's seizure.  This seizure is analyzed under the Fourth Amendment rather than the Due Process Clause directly.

Plaintiff alleges that there was no probable cause for his seizure (whether it was detention or formal arrest), and such cause was contrived by Defendant deputies or officers (see Docket No. 1, Compl. ¶¶ 52-54).  The existence of probable cause is a defense, the parties dispute the facts whether there was probable cause for Plaintiff's arrest, and a Motion to Dismiss cannot be addressed on this claim.

Presuming this detention was arrest by the County Defendants (as alleged by Plaintiff, Docket No. 1, Compl. ¶ 64), the duration of this detention, however, implicates Plaintiff's Fourth Amendment claims.  It is undisputed that the County Defendants held Plaintiff for 45 minutes before transferring him to the City's custody (id. ¶ 65).  As a matter of law, this period is insufficient duration to state a claim for false arrest or false imprisonment.  Mikulec, supra, 909 F. Supp.2d at 227; see Gerstein, supra, 420 U.S. 103 (judicial determination of probable cause within 48 hours will comply with promptness requirements).   In Mikulec, this Court held a two-hour post-arrest detention was reasonable and, absent allegation of impermissible reason for the detention, Conrad Mikulec failed to establish a Fourth Amendment violation, Mikulec, supra, 909 F. Supp.2d at 227

Cain has not articulated a reason for the 45-minute County detention (cf. Docket No. 1, Compl. ¶¶ 65, 67).  Any impermissible reasons would go to the initial detention (addressed in the false arrest claim) and not to the length of time while in County custody.  Thus, Plaintiff has not alleged a due process violation of his Fourth Amendment rights.

         iii. Malicious Prosecution under Fourth Amendment

For Plaintiff's federal malicious prosecution claim, in addition to alleging the elements for common law claim (as discussed for his Third Cause of Action), Plaintiff

needs to allege that his deprivation of liberty was sufficient to constitute a seizure under the Fourth Amendment or was a violation of a right, see Singer, supra, 63 F.3d at 116-17, 116 n.5.  To successfully allege "a § 1983 claim of malicious prosecution in violation of the Fourth Amendment rights, [Plaintiff] must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation," id. at 117 (emphasis added) (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 309, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)).

For three reasons, this claim is rejected.  First, the County Defendants detained Plaintiff before turning him over to the City's custody and before his arraignment.  The County Defendants' detention was pre-arraignment, not subject to a malicious prosecution claim.  Second, Plaintiff's 45-minute detention by the County Defendants does not allege a deprivation of liberty sufficient to constitute a seizure for a federal malicious prosecution claim.  Third, as discussed in the Third Cause of Action, Plaintiff does not argue the viability of this claim and therefore abandoned it.  Therefore, Plaintiff fails to allege malicious prosecution by these Defendants in violation of his Fourth Amendment rights.

### iv.  Other Federal Rights Alleged

As the County Defendants observed (Docket No. 5, Defs. Memo. at 9 n.1), Plaintiff has not alleged in the First Cause of Action how they violated his First, Fifth, or Eighth Amendment rights (cf. Docket No. 1, Compl. ¶¶ 95-96).  He does not address this argument.

Plaintiff does not invoke how any First Amendment right was implicated by his detention and arrest or which right was violated.  The Complaint does not allege any

restraint on Plaintiff's freedom of speech or assembly.  There is no claim that Plaintiff has any press affiliation or that his religious rights were implicated by the County Defendants. This claim is denied.

Although Plaintiff alleges a due process violation, it is actionable against the County Defendants only under the Fourteenth Amendment (applicable to municipalities) and that claim has been addressed above.  Plaintiff does not have a claim under the Fifth Amendment Due Process Clause which is applicable only against the United States, Alexis, supra, 2021 WL 5239900, at *9.  Thus, Plaintiff's claims under the Fifth Amendment Due Process Clause are denied.

The Eighth Amendment also is not applicable for several reasons.  First, Plaintiff's release occurred after the County Defendants turned him over to the Niagara Falls Police. Second, because Plaintiff subsequently was released on his own recognizance (Docket No. 1, Compl. ¶ 83), no bail (excessive or otherwise) was imposed.  Hence, there is no excessive bail present here.  Third, Plaintiff's detention also was pre-conviction and the Eighth Amendment prohibition against cruel and unusual punishment applies only for incarceration after conviction, see City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); Ingraham v. Wright, 430 U.S. 651, 671-72 n.40, 97 S.Ct. 104, 51 L.Ed.2d 711 (1977).  Thus, so much of his First Cause of Action alleging an Eighth Amendment violation is denied.

v.  First and Fourth Causes of Action

The County Defendants' Motion to Dismiss the First (§ 1983 claim for constitutional violations) and Fourth (due process violations) Causes of Action (Docket No. 5) is granted.  Although issues of fact might preclude granting the County Defendants' Motion

to Dismiss the false arrest aspects of Plaintiff's First and Fourth Causes of Action on probable cause grounds, the alleged deprivation of liberty by their 45-minute detention of Plaintiff was too brief to be constitutionally significant.  Plaintiff concedes dismissing his Fourth Cause of Action against the County (Docket No. 8, Pl. Memo. at 14-15).  The brevity of his detention also is fatal to any remaining due process claims against Defendant deputies John Doe 1 and 2.

In sum, Plaintiff's First Cause of Action under § 1983 fails to assert the County Defendants violated Plaintiff's rights under the First, Fifth, and Eighth Amendments.  It also has not alleged violation of his Fourth Amendment rights (applicable to the County Defendants by the Fourteenth Amendment) for seizure or malicious prosecution.  The Complaint also has not alleged a due process violation under the Fourteenth Amendment due to the brevity of the deprivation of Plaintiff's liberty.  Thus, the County Defendants' Motion (Docket No. 5) to dismiss the First Cause of Action is granted.  Their Motion to Dismiss the Fourth Cause of Action also is granted for all moving Defendants.

2.   Second Cause of Action—False Arrest and False Imprisonment

a.   Applicable Standards

To state a claim for false arrest or false imprisonment under New York law "the plaintiff must show that '(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged,'" Salem v. City of N.Y., No. 17 Civ. 4799 (JKG), 2018 WL 3650132, at *3 (S.D.N.Y. Aug. 1, 2018) (quoting Holland v. City of Poughkeepsie, 90 A.D.3d 841, 845, 935 N.Y.S.2d 583, 589 (2d Dep't 2011) (quoting in turn Lee v. City of N.Y., 272 A.D.2d 586, 586, 709 N.Y.S.2d 102, 102 (2d Dep't 2000))

(see Docket No. 5, Defs. Memo. at 11).   The key difference from Fourth Amendment seizure is that the duration of seizure or the length of the deprivation of liberty is not an element of common law false arrest, cf. Muza v. Niketown New York, 278 A.D.2d 13, 14, 717 N.Y.S.2d 142, 143 (1st Dep't 2000) (whether duration of store patron's detention in false arrest claim was reasonable under N.Y. General Business Law § 218 precluded summary judgment); Pawlowski v. State, 45 Misc.2d 933, 939, 258 N.Y.S.2d 258, 265 (N.Y. Ct. Cl.1965) (claimant sustained a false arrest and imprisonment for several hours of detention).

Whether probable cause existed for an arrest to make it privileged can be determined as a matter of law if no one disputes the events and the knowledge of the officers, Weyant, supra, 101 F.3d at 852.

b.      Parties' Contentions

As they argued above against the First Cause of Action, the County Defendants argue Plaintiff failed to allege common law false arrest or false imprisonment (Docket No. 5, Defs. Memo. at 11-16).   Plaintiff generally argues that these Defendants lacked authority to arrest him (Docket No. 8, Pl. Memo. at 10-11).

c.      Allegation of Claim of False Arrest and False Imprisonment

Exercising supplemental jurisdiction over this and the remaining timely state law claims and although Plaintiff alleges the Niagara Falls police arrested him, he does claim that the County Defendants first detained him and turned him over to the Niagara Falls Police who formally arrested him (Docket No. 1, Compl. ¶¶ 61-65, 67).   As discussed above for the First and Fourth Causes of Action and as conceded by the County Defendants (see Docket No. 5, Def. Memo. at 11), Plaintiff has alleged Defendants

28

intended to confine him, that he was conscious of the confinement and did not consent to it, and the confinement is not privileged.

i.   Authority to Detain or Arrest

Plaintiff challenges the authority of John Does 1 and 2 to detain him. Criminal Procedure Law § 140.10 restricts the authority of a police officer to arrest for a petty offense (such as the harassment violation charged here, N.Y. Penal L. § 240.26(1)) to offenses that were committed "within the geographical area of such police officer's employment or within one hundred yards of such geographical area," N.Y. Crim. Proc. L. § 140.10(2)(a). Section 140.10(3) authorizes a police officer to arrest a person "for a crime. . . whether or not such crime was committed within the geographical are of such police officer's employment, and he or she may make such arrest within the state, regardless of the situs of the commission of the crime," id. § 140.10(3)."

"Police officer" in this law is defined to include Sheriff's deputies, N.Y. Crim. Proc. L. § 1.20(34)(b), while "petty offense" is defined as a violation or traffic infraction, id. § 1.20(39). A deputy's geographical area of employment is the county, id., § 1.20(34-a)(b), here Niagara County (including the Town of Wheatfield).

Plaintiff argues the Niagara County Sheriff was acting under a police services agreement with the Town of Wheatfield because the town lacks its own police force (Docket No. 8, Pl. Memo. at 10), although Plaintiff did not allege this agreement in the Complaint and that agreement was not produced in the record of this Motion.

Upon the present record, however, Defendant deputies could have been acting pursuant to their countywide jurisdiction. If the deputies' authority was as limited as Plaintiff now argues, he fails to name the Town of Wheatfield as a Defendant, presumably

these deputies responded to the 911 call in that town and detained Plaintiff for that petty offense under the town's authority.  Thus, the violation arrest was within the deputies' countywide jurisdiction of the Niagara County Sheriff.

Plaintiff also was charged with a misdemeanor, Penal L. § 121.11 (criminal obstruction of breathing), which is not a petty offense.  Defendant deputies thus were not restricted due to any jurisdictional restraint from detaining or arresting Plaintiff for that misdemeanor offense, N.Y. Crim. Proc. L. 140.10(3); see People v. Twoguns, 108 A.D.3d 1091, 1092, 969 N.Y.S.2d 337, 338 (4th Dep't) (officer may arrest for a crime, as opposed to a petty offense, whether or not within officer's geographical area of employment), appeal denied, 21 N.Y.3d 1077, 974 N.Y.S.2d 326 (2013).

Therefore, Defendant deputies John Does 1 and 2 had the jurisdiction and authority to detain or arrest Plaintiff.  His arguments to the contrary are rejected.

ii.   Privilege from Probable Cause

The County Defendants argue that the detention was privileged because the deputies had probable cause to seize Plaintiff.  Without the parties agreeing on the facts of probable cause, this affirmative defense cannot be resolved in a Motion to Dismiss, see Posr v. Court Officer Shield #207, 180 F.3d 409, 415 (2d Cir. 1999); Coyle v. Coyle, 354 F. Supp.2d 207, 211-12 (E.D.N.Y. 2005).

The cases cited by the County Defendants for the proposition that probable cause is a complete defense here (Docket No. 5, Defs. Memo. at 11-12) were cases on summary judgment motions, e.g., Williams v. Town of Greenburgh, 535 F.3d 71, 74, 78-79 (2d Cir. 2008); Barnes v. City of N.Y., 338 F. Supp.3d 317, 320, 322 (S.D.N.Y. 2018), where

evidence of probable cause or not could be introduced and the procedural question was the existence of material issue of fact if there was probable cause to arrest those plaintiffs.

The County Defendants cited one case where defendants successfully moved to dismiss a false imprisonment claim based upon probable cause for the detention (id. at 11).  In Thompson v. Kline, 504 F. Supp.3d 200, 208 (W.D.N.Y. 2020) (Larimer, J.) (id.), plaintiff Thomas Thompson and his then-girlfriend were in a violent domestic dispute with each other, and defendant New York State Trooper Collings arrested Thompson and then charged him with assault, a charge ultimately dismissed, id. at 206, 207-08, 209. Defendants moved for judgment on pleadings under Rule 12(c), under a similar standard as a Motion to Dismiss under Rule 12(b)(6), Thompson, supra, 504 F. Supp.3d at 207. The Complaint included 195 pages of exhibits including General Municipal Law § 50-h minutes, id. at 205-06.  Based upon this substantial record, Judge Larimer found that Thompson and his girlfriend each reporting the domestic dispute to the authorities. Thompson claimed self-defense and admitted that he pushed the girlfriend.  From this evidence and the injuries, the girlfriend suffered, Judge Larimer found that Trooper Collings had probable cause to arrest Thompson and dismissed Thompson's false imprisonment claim against him.  Id. at 209.  The mutual reporting of the incident to authorities eliminated the factual dispute whether that arrest had probable cause and Thompson did not raise a factual issue.

Plaintiff Cain and the moving Defendants in the present case, however, dispute whether the deputies had probable cause to arrest Plaintiff, with Plaintiff claiming the deputies induced Brewer to sign the criminal complaint against Cain which Deputy

Kennedy denies (Docket No. 5, Ex. A, Kennedy Decl.).  This factual dispute precludes deciding probable cause as a matter of law, cf. Weyant, supra, 101 F.3d at 852.

Since the false arrest claim under § 1983 is the same as state common law, Singer, supra, 63 F.3d at 118, the County Defendants' Motion to Dismiss (Docket No. 5) the Second Cause of Action alleging common law false arrest is denied because of the issue of whether the County Defendants had probable cause cannot be resolved on this Motion.

### 3.  Third Cause of Action—Malicious Prosecution

#### a.  Applicable Standards

As stated above, common law malicious prosecution in New York requires commencement of a criminal proceeding against Plaintiff, termination of that case in his favor, the absence of probable cause, and actual malice, Broughton, supra, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94

#### b.  Parties' Contentions

The County Defendants argue that the malicious prosecution claims are meritless (Docket No. 5, Defs. Memo. at 16-17), claiming Plaintiff did not allege the deputies had any involvement in his prosecution (id. at 16, 17), see Shepherd v. Nandalawaya, No. 19CV6406, 2020 WL 1963126, at *2 (W.D.N.Y. Apr. 21, 2020) (Wolford, J.) (plaintiff must allege personal involvement in § 1983 claim).  They again assert that the detention was privileged, hence probable cause to avoid a malicious prosecution claim (id.).

Plaintiff has not addressed the malicious prosecution claim against the County Defendants (cf. Docket No. 12, Defs. Reply Memo. at 7).  The County Defendants take this omission as a concession and an alternative reason for dismissal of this claim (id.).

c.     Allegation of Malicious Prosecution Claim

Plaintiff alleges the commencement and favorable termination of the criminal prosecution against him arising from the County Defendants' detention and transfer to the Niagara Falls Police Department.  He makes a general allegation of actual malice by the County Defendants that they were aware of his innocence and maliciously prosecuted him in any event (Docket No. 1, Compl. ¶¶ 85, 99, 102).

Contrary to the County Defendants' argument, Plaintiff has alleged John Doe 1 and 2's personal involvement in prosecuting Plaintiff by detaining Plaintiff and turning him over to the Niagara Falls Police (and eventual prosecution).

The County Defendants now alternately claim Plaintiff failed to defend his Third Cause of Action in this Motion, thus, that claim should be dismissed as abandoned as to the moving Defendants, see Curto v. Bender, No. 04CV26, 2005 WL 724156, at *16 (W.D.N.Y. Mar. 28, 1997) (Skretny, J.); see also Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F. Supp. 895, 907 n.11 (S.D.N.Y.) (failure to defend state law claim is abandonment of the claim under state law), aff'd, 130 F.3d 1101 (2d Cir. 1997) (Docket No. 12, Defs. Reply Memo. at 7).  Plaintiff does allege malicious prosecution in the First Cause of Action as a violation of the Fourth Amendment.  As a § 1983 claim, one element for that claim was establishing the elements for common law malicious prosecution.  Plaintiff now, however, has not argued the viability of a malicious prosecution claim for either cause of action.  He was given the opportunity to defend this claim (including seeking leave to supplement on other grounds) but did not do so.

The County Defendants' Motion to Dismiss (Docket No. 5) the Third Cause of Action for malicious prosecution is granted because Plaintiff's abandonment of this cause of action.

### 4.   Fifth Cause of Action—Municipal Liability

#### a.   Standards

As this Court observed in Romanac, supra, 2021 WL 409859, at *9-10, "A municipality may not be held liable under § 1983 solely because it employs a tortfeasor," Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  This is based in part on the text of § 1983 because that statute imposes liability upon the person who deprived a federal right, id. at 403.  The Supreme Court also found that § 1983's legislative history revealed that Congress intended to limit municipal liability because of its concern about imposing liability upon a municipality for the conduct of others, id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), citing Monell, supra, 436 U.S. at 665-83).

"To hold a city liable under § 1983 for unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right," Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); see City of Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Monell, supra, 436 U.S. at 694 (plaintiff must identify the municipal policy or custom that caused plaintiff's injury) (id.).  That policy or custom must be "the moving force" behind violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (id.).  Plaintiff also

needs to show that the policy or custom proximately caused the deprivation, Owen v. City of Independence, 445 U.S. 622, 633, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (id.).

Under Article XIII of the New York State Constitution, a county cannot be made liable for the acts of its sheriff or its deputies, N.Y. Const. art. XIII, § 13(a); Hall v. County of Monroe, 110 A.D.2d 1088, 488 N.Y.S.2d 940 (4th Dep't 1985); Stalteri v. County of Monroe, 107 A.D.2d 1071, 1071, 486 N.Y.S.2d 555, 556 (4th Dep't 1985); Wilson v. Sponable, 81 A.D.2d 1, 11, 439 N.Y.S.2d 549, 555 (4th Dep't 1981), appeal dismissed, 54 N.Y.2d 834 (1981).  In Barr v. County of Albany, 50 N.Y.2d 247, 257, 428 N.Y.S.2d 665, 670 (1980), the New York State Court of Appeals recognized that a county could enact a local law to assume responsibility for the tortious acts of its deputy sheriffs as distinct from the acts of the Sheriff.

b.      Parties' Contentions

The County Defendants deny municipal liability for any respondeat superior for the acts of the deputies (Docket No. 5, Defs. Memo. at 1, 17-19; see Joerg Decl. ¶¶ 3-4).

Plaintiff concedes that the Fourth and Fifth Causes of Action should be dismissed only as to Niagara County; he still contends that he states a claim against John Does 1 and 2 for due process and municipal liability (Docket No. 9, Pl. Atty. Affirm. ¶¶ 3-4; Docket No. 8, Pl. Memo. at 4).  It is unclear how individual deputies can be liable as a municipality. Earlier in this Decision, this Court dismissed the Fourth Cause of Action for due process violations.

c.      Analysis

Niagara County has not adopted a local law accepting tort liability for its deputies (Docket No. 5, Niagara County Attorney Claude Joerg Decl. ¶¶ 3-4), see also Saleh v.

County of Erie, No. 12CV468, 2015 U.S. Dist. LEXIS 47166, at *19-20 (W.D.N.Y. Apr. 10, 2015) (Skretny, J.) (while Erie County has local law indemnifying employees, county did not intend to assume vicarious liability by that enactment).   Plaintiff concedes that, contrary to unspecified past practice of assuming liability, Niagara County currently is not liable under the Fifth Cause of Action (Docket No. 8, Pl. Memo. at 14-15).   The County Defendants' Motion to Dismiss (Docket No. 5) the Fifth Cause of Action against Niagara County is granted.

Nevertheless, Plaintiff argues that his Fifth Cause of Action remains alleged against deputies John Doe 1 and 2 (id. at 15).   Review of that claim, however, shows Plaintiff alleges the actions or inactions of Niagara County and the City, focusing on policies of pursuing cases where law enforcement officers and prosecutors know the suspect is innocent (cf. Docket No. 1, Compl. ¶¶ 109, 110).   The Complaint does not allege that John Doe 1 or 2 instituted any policy or custom or deem them to be policymakers who failed to train deputies like themselves to not falsely accuse anyone (cf. id. ¶ 114) or implemented policy they developed.   Plaintiff also alleges negligent hiring and retention of the deputies (id. ¶ 117) and failure to take corrective action (id. ¶ 119), addressing this claim to Niagara County and not to the deputies themselves.   The Complaint does not allege any training role for the individual County Defendants.   The focus of this Cause of Action is respondeat superior (cf. id. ¶ 118).   That allegation seeks to make the employing municipality liable for the tortious acts of its employees, here John Doe deputies 1 and 2; it cannot make the employees responsible.   This Cause of Action does not state a claim against the alleged tortfeasor deputies.

The County Defendants' Motion to Dismiss (Docket No. 5) the Fifth Cause of Action against all of them is granted.

### 5.  Supplemental Jurisdiction

With some of Plaintiff's § 1983 claim alleged in the First Cause of Action remaining, this Court has original federal jurisdiction over the case.  This Court will exercise supplemental jurisdiction over the remaining Second Cause of Action for common law false arrest and false imprisonment because that claim shares the same nucleus of operative facts with his federal claims, all arising from his alleged false detention and arrest by John Does 1 and 2.  With the state appellate decision in <u>Brash</u>, <u>supra</u>, 195 A.D.3d 582, 149 N.Y.S.3d 560, this Court need not hesitate to exercise supplemental jurisdiction over any of these state claims from any uncertainty with the toll of the statute of limitations by the COVID pandemic Executive Orders.

## IV.  Conclusion

First, the COVID pandemic Executive Orders tolled (rather than suspended) the relevant statutes of limitation.  Plaintiff's state law claims are timely.  This Court exercises supplemental jurisdiction over these claims.

On the substance of Plaintiff's allegations, he fails to allege violations of his due process rights or significant deprivation of his liberty in his 45-minute detention by the County Defendants.  Issues of fact as to probable cause for the detention and arrest permeate this record and ordinarily would preclude dismissal of the federal false arrest claim under the Fourth Amendment on that ground in a Motion to Dismiss.  Plaintiff's failure to allege a constitutionally significant deprivation of his liberty, however, warrants dismissal of his claims.

County Defendants' Motion to Dismiss (Docket No. 5) the First and Fourth Causes of Action is granted.

Their Motion to Dismiss the Second Cause of Action alleging common law false arrest, however, is denied because the state law does not require an allegation of significant deprivation of liberty.

As for Plaintiff's Third Cause of Action for malicious prosecution, Plaintiff has not opposed the County Defendants' Motion, hence abandoning this claim; the Motion to Dismiss (Docket No. 5) is granted.

The County Defendants' Motion to Dismiss the Fifth Cause of Action against Niagara County also is granted (on Plaintiff's stipulation, Docket No. 9, Pl. Atty. Affirm. ¶ 3; Docket No. 8, Pl. Memo. at 4); their Motion {also is granted to dismiss this claim as for failure to state a respondeat superior claim against John Does 1 and 2.

Defendant Niagara Falls' crossclaim against the County Defendants (Docket No. 13, ¶ 35), is dismissed in part as Plaintiff's claims against the County Defendants are dismissed (see Docket No. 14).  Where Plaintiff's claims remain against the County Defendants (for example, under the Second Cause of Action), the City's crossclaim against these codefendants also remain.

With these remaining claims under the Second Cause of Action, and the City of Niagara Falls still a Defendant (despite the non-appearances for John Doe police officers 3 and 4), Plaintiff shall serve an Amended Complaint to restate only his remaining claims against the County Defendants; Plaintiff has twenty-one (21) days from entry of this Decision and Order to so amend.  Defendants then will have twenty-one (21) days from service of the amended pleading to answer or move against the amended pleading.

## V.    Orders

IT HEREBY IS ORDERED, that the Motion to Dismiss (Docket No. 5) of Defendants Niagara County, John Does 1 and 2 is GRANTED IN PART and DENIED IN PART.

FURTHER, Plaintiff shall file an Amended Complaint (consistent with this Decision and Order identifying the remaining viable claims) within twenty-one (21) days of entry of this Decision and Order.

FURTHER, all remaining Defendants shall answer the Amended Complaint or move to dismiss within twenty-one (21) days of service.

SO ORDERED.


Dated:         March 2, 2022
               Buffalo, New York


                                                s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                               United States District Judge